UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WENDY GARIGIOLA,

        Plaintiff,

v.                                          Case Number: 08-13763

CITY OF BRIGHTON, LIVINGSTON        HON. MARIANNE O. BATTANI
COUNTY, MILLER, and SELL, in their
individual and official capacities,

        Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendants City of Brighton and Officer Miller's Motion for Summary Judgment (Doc. No. 41). The Court heard oral argument on December 9, 2009, and at the conclusion of the hearing, took this matter under advisement. For the reasons that follow, the motion is **GRANTED** in part and **DENIED** in part.

**I. STATEMENT OF FACTS**

This case arises out of Plaintiff Wendy Garagiola's arrest following a traffic stop. On September 21, 2005, Garagiola was driving on I-96 with a passenger, Robert Ross, in a Ford F-150 pick-up truck. Deputy Sell of the Livingston County Sheriff's Department pulled over the pick-up truck, which was being driving in excess of the speed limit. The parties dispute whether Plaintiff pulled over immediately or continued to drive for several miles. Because Defendants Sell and Livingston County have been dismissed pursuant to stipulation and order, the factual disputes relative to Garagiola's encounter with Sell

are not material to the resolution of this motion.  They are included to provide a clear understanding of the events at issue in this motion.

Once the vehicle stopped, Sell approached and asked Plaintiff for her driver's license, registration, and insurance.  Garagiola provided a Michigan Temporary Instructional Permit in the name of Katherine Shepherd.  Garagiola informed Sell that the truck belonged to her boss, but she could not provide her boss's name.  Ross advised Sell that his driver's license was suspended.  Sell then asked Garagiola to step out of the car, which she did.

According to Sell, when he started walking Garagiola over to the patrol car, she resisted and walked away toward the pick-up truck.  Sell then grabbed Garagiola's left arm in an escort position.  Garagiola again pulled away. Consequently, Sell forced Garagiola to the ground, and the two ended up in the ditch.

In contrast, Garagiola states that she fully complied with Sell's orders; she placed her hands on the pick-up, per the deputy's request.  But when Sell began to pat her down, Garagiola asked him if she could empty her pockets first.  Instead, Sell pushed her into the ditch on the side of the highway.

According to Sell, he lay on top of Plaintiff in an attempt to control her as she was actively resisting him. Garagiola states that after she landed in the ditch, she began to move away from Sell because she was afraid of him.  She claims that she eventually lay face-down on the ground, and Sell used both of his arms to push down her shoulders while her arms were underneath her body.  Sell called Central Dispatch and requested immediate assistance.

Defendant Officer Miller was the first to arrive on the scene. Sell instructed him to secure Ross, who was still sitting in the car. Miller took Ross out of the vehicle, handcuffed him, and placed him on the ground. According to Defendants, at that point, Sell still was verbally commanding Garagiola to put her hands behind her back. Nevertheless, Garagiola, kept trying to lift herself off the ground and twisting and turning underneath him. She had her hands underneath her body. Miller moved to assist Sell, by placing himself on the right side of Garagiola, and placing his right leg along Plaintiff's body. Sell managed to grab Garagiola's left arm, and Miller grabbed Garagiola's right arm. Garagiola continued to resist these officers' efforts. As Miller began a wrist-lock maneuver to her right wrist, Garagiola twisted her body. Immediately thereafter Garagiola went limp and began to complain of wrist pain. After Miller and Sell handcuffed Garagiola, they escorted her to the patrol car and waited until Emergency Medical Services arrived to transport her to the hospital for medical treatment.

Garagiola maintains that she never twisted or turned and was not trying to resist the officers' orders or flee. As her wrist snapped, Miller stated, "That's what you get." Compl. ¶ 19.

The investigation following Garagiola's arrest revealed that the pick-up truck that she was driving was stolen, and after searching the vehicle, officers found crack cocaine, a crack pipe, and a wire brush to clean the crack pipes. She subsequently pleaded guilty to Stolen Property-Receiving and Concealing–Motor Vehicle and Assaulting and Resisting or Obstructing a Police Officer–Deputy Sell.

Plaintiff alleges claims of excessive force (Count I), and gross negligence (Count II), against Miller and failure to train against the City of Brighton (Count III).

## II. STANDARD OF REVIEW

The Federal Rule of Civil Procedure authorize this Court to grant summary judgment "if the pleadings, the discovery and disclosure of materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). There is no genuine issue of material fact if there is no factual dispute that would affect the legal outcome of the issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether summary judgment is appropriate, this Court "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." Hawkins v. Anheuser-Busch Inc., 517 F.3d 321, 332 (6th Cir. 2008). However, a party opposing summary judgment "may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e)(2).

As the United States Supreme Court has ruled:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. See Hager v. Pike County Bd. of Educ., 286 F.3d 366, 370 (6th Cir. 2002). "[T]he burden on the moving party may be discharged by 'showing' - that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party carries that burden, the burden then shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. FED. R. CIV. P. 56(e); Chao v. Hall Holding Co., 285 F.3d 415, 424 (6th Cir. 2002). "The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 256 (1986). The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. See Hunt v. Cromartie, 526 U.S. 541, 549 (1999); Sagan v. U.S., 342 F.3d 493, 497 (6th Cir. 2003).

"A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted) (quoting Black's Law Dictionary 881 (6th ed. 1979)). To create a genuine issue of material fact, the nonmovant must do more than present some evidence on a disputed issue.

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

Anderson, 477 U.S. at 249-50. "No genuine issue of material fact exists when the 'record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" Michigan Paytel Joint Venture v. City of Detroit, 287 F.3d 527, 534 (6th Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587

(1986)).  The evidence itself need not be the sort admissible at trial.  <u>Tinsley v. General Motors Corp.</u>, 227 F.3d 700, 703 (6th Cir. 2000).  However, the evidence must be more than the nonmovant's own pleadings and affidavits.  <u>Smith v. Campbell</u>, 250 F.3d 1032, 1036 (6th Cir. 2001).  The mere existence of a scintilla of evidence in support of the non-movant is not sufficient; there must be sufficient evidence upon which a jury could reasonably find for the non-movant.  <u>Anderson</u>, 477 U.S. at 252.

### III.  ANALYSIS

Plaintiff seeks relief under federal and state law.  Defendants move for summary judgment on all remaining claims.

#### A.  Federal Claims

Plaintiff pursues her federal claims under 42 U.S.C. § 1983.  It provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects or causes to be subjected, any citizen of the United States  . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  Under the language of the statute, to succeed on a § 1983 claim, a plaintiff must prove that a person deprived him of a federal right and that person acted under color of state law.  <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988).    There is no dispute that Miller was acting under color of state law. The federal right at stake include freedom from excessive force.

##### 1. Excessive Force

To determine whether Plaintiff has made a prima facie case for the deprivation of

constitutional rights arising from the alleged excessive force, the Court analyzes the conduct under the Fourth Amendment and its "reasonableness standard." Graham v. Connor, 490 U.S. 386, 394-95 (1989). The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. . . ." U.S. Const. amend. IV.

To determine whether a particular use of force is reasonable as opposed to excessive, one must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interest at stake." Graham, 409 U.S. at 396. The test requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. The question is whether an officer's action was "objectively reasonable" given the facts and circumstances confronting the officer at the time of the use of force. Id. Not every push or shove gives rise to a § 1983 claim, nor will a minimal use of force support such a claim. Id.; Collins v. Nagle, 892 F.2d 489, 496 (6th Cir. 1989).

In assessing whether the officer's conduct was reasonable as a matter of law, the Court must resolve factual disputes in favor of Plaintiff, the nonmoving party. The Court observes that an officer may use force to gain compliance with an order; however, "even where some force is justified, the amount actually used may be excessive." Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002). Therefore, even if the officer was entitled to use force to arrest Plaintiff, the degree of force used must have been reasonable as a matter of law for Defendants to succeed in their motion.

According to Defendants, Miller used a reasonable amount of force under the circumstances, and the video from his patrol car substantiates his position. Upon Miller's arrival, he secured the passenger. He then approached the ditch where Sell was straddling Plaintiff. The parties contest whether Plaintiff actively resisted the officers' orders to place her hands behind her back or whether she was unable to comply because her hands were underneath her body. The video shows that Miller straightened Plaintiff's right arm behind her back. Miller states that he applied a wrist lock and when Plaintiff twisted her body, she sustained a right wrist fracture. She claims that Miller broke her wrist even though she was not resisting arrest. According to Plaintiff, Miller went behind her, grabbed her right arm with both hands and forcibly fractured her right wrist.

Under Scott v. Harris, 550 U.S. 372, 381 (2007), "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Here, the record is not so clear that Miller's version of the events must be credited. To be sure Plaintiff's allegation, that Miller grabbed her wrist with both hands is belied by the video. It shows that he grabbed her upper arm and her wrist,. This conflict between Plaintiff's allegations and the video does not place this dispute within the holding of Scott. The videotape shows that Miller was assisting Sell with handcuffing Plaintiff when her injuries occurred. The lack of audio to either confirm or contest Plaintiff's assertion that Miller suggested that she got what she deserved immediately after her wrist broke is significant because even if Plaintiff was unclear where Miller put his hands, it is the comment that supports her theory. Therefore, in assessing whether the officer's conduct was reasonable as a

8

matter of law, the Court must resolve factual disputes in favor of Plaintiff, the nonmoving party.

In assessing whether the degree of force Miller employed was acceptable, factors do not solely favors either Garigiola and Miller. For example, there is no evidence suggesting that Plaintiff was assaultive. She was driving on a temporary permit without a licensed driver and speeding. Neither crime is serious, and in light of Sell's directive for Miller to secure the passenger, there is nothing to suggest that Sell considered Plaintiff dangerous. On the other hand, Plaintiff did repeatedly ignore the officer's orders to put her hands up, and she did not cooperate with the officers' efforts to handcuff her. In this case, the Court finds the question must be resolved by a jury, particularly in light of Plaintiff's allegation that after her wrist snapped, Miller stated, "That's what you get." Compl., ¶ 19. Specifically, a jury could infer in light of the comment that Miller's conduct was intentional. Based on these facts, the Court cannot say as a matter of law that Miller's conduct was objectively reasonable.

### 2. Qualified immunity

Defendants raise the affirmative defense of qualified immunity. Qualified immunity is available to a government employee when operating within the scope of his assigned duties. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). When determining whether a defendant is entitled to qualified immunity, the court must consider whether, "[t]aken in the light most favorable to the party asserting the injury, [ ] the facts alleged show the officer's conduct violated a constitutional right". Saucier v. Katz, 533 U.S. 194, 201 (2002). If the answer is yes, the court must determine whether the right was clearly

established. Id.

The right to be free from excessive force was clearly established. Miller's responded to Plaintiff's refusal to put her arms behind her back by using a wrist lock technique, a pain compliance technique, which he considered a low level of force. According to Miller, "You apply just enough pressure to get compliance and once compliance is received, the pressure is relieved." (Defs.' Ex. D at 37-38). However, Plaintiff contends that Miller broke her wrist and said, "That's what you get." Clearly, if a jury were to credit Plaintiff's version of the events, her right to be free from the force under those circumstances was clearly established at the time. The Court's determination is not altered by Defendants' argument that Plaintiff's injury is not indicative of the degree of force, because Dr. Philip Schmitt, a board certified orthopedic surgeon, contends that Plaintiff was susceptible to fracture of any bone due to osteoporosis. The injury she sustained, under her version of events, was inflicted intentionally by Miller. Accordingly, Defendants' request for qualified immunity is denied.

### 3. Municipal Liability

Plaintiff includes a claim against the City for failure to supervise its officers. To recover against the City, Plaintiff must show that her civil rights were violated pursuant to and as a direct result of its official policy or custom. See Monell v. Department of Social Services of City of New York, 436 U.S. 658, 690-95 (1978). The alleged unconstitutional action must implement either a policy or ordinance officially promulgated by the City, or constitute a governmental "custom" which, although not formally adopted, "can fairly be said to represent official policy." Id. at 690-91, 694. The burden in this regard requires a showing that the unconstitutional policy or custom existed, that the policy or custom was connected to the City, and that the policy or

custom caused his constitutional violation. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985); Doe v. Claiborne County, Tenn., 103 F.3d 495, 507 (6th Cir. 1996).

Plaintiff has presented no evidence to show that the wrist lock has been used with regularity resulting in serious injuries such that it has been a common occurrence facing the Brighton Police. See City of Oklahoma City v. Tuttle, 105 S.Ct. 2427, 2436 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."). The case upon which Plaintiff relies, Kammeyer v. City of Sharonville, No. 1:01-CV-00649 2006 U.S. Dist. LEXIS 24058 (S. D. Ohio April 26, 2006), is not analogous. In that case, the municipality failed to review or discipline an officer during his thirty-two years of employment despite numerous complaints by citizens that would have put it on notice. In addition, in Kammeyer, there was evidence that the entire command staff reported dissatisfaction with the defendant's job performance. The court found that the Monell standard may be satisfied where a serious failure to supervise employees amounts to deliberate indifference to the rights of persons with whom the employees come into contact.

Here, Plaintiff has no evidence that complaints against Miller had been made, or that the City of Brighton ignored complaints, or that Miller's conduct was so deficient that the City's failure to intervene amounted to deliberate indifference. Consequently, the Court finds that Defendants are entitled to summary judgment on Count III.

**B.  State Claim**

In addition to Plaintiff's federal claims, she asserts a claim of gross negligence under Michigan law.  An employee of a governmental agency acting within the scope of his authority is immune from tort liability, unless the employee's conduct amounts to gross negligence that is the proximate cause of the injury.  MICH. COMP. LAWS § 691.1407(2). Gross negligence is "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." Id. at § 691.1407(7)(a).

The parties dispute whether the proof against Miller sustains a claim of gross negligence inasmuch as it is premised solely on her claim of excessive force.     In VanBorous v. Burmeister, 687 N.W.2d 132, 143 (Mich. App. 2004), the state court rejected a claim that police officers were grossly negligent when they shot and killed an individual, reasoning that the claim was actually one of excessive force.

> In her allegations pertaining to this count of her complaint, plaintiff claimed that defendants "undertook the obligation to properly perform their duties to ensure the safety of all parties during the chase and subsequent attempted apprehension of [the plaintiff]," and that defendants "breached the duty of care they owed to [the plaintiff] by utilizing excessive force to subdue or control [him] and failing to follow proper police procedure in apprehending him." Thus, plaintiff's claim of gross negligence is fully premised on her claim of excessive force. As defendants correctly note, this Court has rejected attempts to transform claims involving elements of intentional torts into claims of gross negligence. Smith v. Stolberg, 231 Mich.App. 256, 258-259, 586 N.W.2d 103 (1998); Sudul v. Hamtramck, 221 Mich.App. 455, 458, 477, 562 N.W.2d 478 (1997). Thus, plaintiff did not state a claim on which relief could be granted. MCR 2.116(C)(8).

Id.  This reasoning has been endorsed by several courts in this district.  See Miller v. Sanilac County, No. 07-14965, 2009 WL 416438 (E.D. Mich. Feb 18, 2009 (Duggan, J) (granting summary judgment on the gross negligence claim because the plaintiff merely attempted "to reframe his claims regarding the officer's use of handcuffs and conduct while effecting the arrest, and Michigan has rejected attempts to transform claims

involving elements of intentional torts into claims of gross negligence"), Kelly v. Fruit, No. 05-73253, 2006 WL 3544107 (E.D. Mich Dec. 8, 2006) (Lawson, J.) (same).

After considering the facts of this case and the relevant case law, the Court finds that Plaintiff's claim of gross negligence must be dismissed. Under the facts she alleged, an intentional tort claim is pleaded. The sole reason her excessive force claim survives is her assertion that Miller made a comment after breaking her wrist that she deserved it. In support of this claim, Plaintiff merely restated the excessive force claim advanced against Miller in support of her theory that Miller was grossly negligent. Additionally, there is no evidence that the use of a wrist lock is not an accepted pain compliance technique, and there is no suggestion that the mere use of the wrist lock was grossly negligent. Because Plaintiff failed to allege sufficient factual allegations of gross negligence in her complaint, dismissal of Count II is proper.

## IV. CONCLUSION

In accordance with the opinion issued above, the Court **GRANTS** summary judgment on Counts II (gross negligence against Miller) and III (municipal liability) and **DENIES** summary judgment to Miller on Count I (excessive force against Miller). Accordingly, the City of Brighton is **DISMISSED**.

**IT IS SO ORDERED**.

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

Dated: January 7, 2010

**CERTIFICATE OF SERVICE**

Copies of this Order were served upon counsel of record on this date by ordinary mail and/or electronic filing.

<u>s/Bernadette M. Thebolt</u>
Case Manager